```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   --------------------------------x
                                      17-CV-723(CBA)
 3   MASPETH FEDERAL SAVINGS and
     LOAN ASSOCIATION,
 4                                     United States Courthouse
             Plaintiff,                Brooklyn, New York
 5
             -against-                 April 17, 2017
 6                                     12:00 p.m.
     ISRAEL RUBINSTEIN, et. al.,
 7
             Defendants.
 8   --------------------------------x

 9        TRANSCRIPT OF CIVIL CAUSE FOR PRE MOTION CONFERENCE
               BEFORE THE HONORABLE CAROL B. AMON
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   Attorney for Plaintiff:   LAW OFFICE OF MARK L. CORTEGIANO
                               65-12 69th Place
13                             Middle Village, New York 11379
                               BY:  MARK L. CORTEGIANO, ESQ.
14
     Attorney for Defendant:   IMBESI LAW P.C.
15                             450 7th Avenue, Suite 1408
                               New York, New York 10123
16                             BY:  BRITTANY SLOANE WEINER, ESQ.

17   Attorney for Defendant:   MFO LAW P.C
                               260 Madison Avenue, 17th Floor
18                             New York, New York 10016
                               BY:  FRAN OBEID, ESQ.
19
     Attorney for Defendant:   SACCO & FILLAS LLP
20                             31-19 Newtown Avenue, Seventh Floor
                               Astoria, New York 11102
21                             BY:  TODD RICHARD DRUMMER, ESQ.

22   Court Reporter:           Georgette K. Betts, RPR, CSR, OCR
                               Phone:  (718)804-2777
23                             Fax:    (718)804-2795
                               Email:  Georgetteb25@gmail.com
24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

1    THE LAW CLERK:  Maspeth Federal Savings versus

2    Rubinstein, 17-CV-723 on for pre motion conference.

3    THE COURT:  Parties state their appearance, please,

4    first for plaintiff.

5    MR. CORTEGIANO:  Good afternoon, Mark L. Cortegiano

6    for the plaintiff, Maspeth Federal Savings and Loan

7    Association.

8    MS. WEINER:  Brittany Weiner from Imbesi Law for

9    Israel Rubinstein and about 19 other defendants.

10    THE COURT:  And who else?

11    MS. OBEID:  Yes.  Fran Obeid, MFO Law, P.C.  Good

12    afternoon, Your Honor.

13    THE COURT:  Good afternoon.

14    MS. OBEID:  I represent Mary Ann Morea, Michael

15    Morea, Dominick Napolitano, Celina Napolitano, Irving Gordon

16    and Pamela Chadroff.

17    THE COURT:  All right.

18    MR. DRUMMER:  Yes, Your Honor, Todd Drummer from

19    Sacco & Fillas LLP, and we represent Frances Dipompo.

20    THE COURT:  Are all of the defendants represented?

21    MR. CORTEGIANO:  No, Your Honor, at this stage -- in

22    fact, one of things I wanted to update Your Honor on is the

23    status of service.

24    THE COURT:  You all can be seated.

25    MR. CORTEGIANO:  So 89 of the defendants have

1  responded to our request for a waiver of service and we filed

2  all those.  There's also been a number of defendants who have

3  indicated they have no claim and we voluntarily dismissed

4  those claims as they've come along, and we have left to serve

5  45 defendants, most of whom are local in the area, and at this

6  stage our time to serve is currently May 9th.

7         So, we would now -- since we've received the last of

8  what we're going to receive in terms of waivers, we would then

9  undertake to complete service by May 9th and at that point

10  we've had discussions with counsel that there are certain

11  other defendants that may have to be added to -- who may have

12  claims that have to be added to the complaint, so we would

13  amend the caption after we've completed service so all parties

14  are in the case and we're not doing it before that time.

15         THE COURT:  I'm sorry, you're not doing what before

16  that time?

17         MR. CORTEGIANO:  I wouldn't want to amend the

18  caption and add new parties and then have to -- before we've

19  completed service on all current defendants.  It would seem to

20  me we should add them after we've served all the current ones,

21  we'll get them all served.

22         THE COURT:  Don't you have to amend to add them?

23         MS. WEINER:  Yes, Your Honor, that's what I'm

24  saying, I amend after -- I would serve all the current

25  defendants, I would then amend the -- either issue a

1  supplemental summons adding new defendants and then amend the

2  complaint.

3       THE COURT:  When are you going to be in a position

4  to add the new defendants?

5       MR. CORTEGIANO:  I would say once we complete

6  service on the initial defendants.

7       THE COURT:  Why weren't they named before?

8       MR. CORTEGIANO:  I think that it's just in terms

9  of -- there were individuals that, as I understand it, who --

10 you know, we had in our conversations with the bank we

11 understood these people to be the ones to serve.  In

12 discussions with counsel, they've indicated that these other

13 people have claims to that money, but I don't know that I have

14 the particulars --

15      THE COURT:  Counsel for whom?

16      MR. CORTEGIANO:  For other defendants, counsel who

17 represent other defendants.

18      THE COURT:  You also think that they are going to

19 represent yet other defendants who have not yet been named, is

20 that what the issue is?

21      MS. WEINER:  Your Honor, we actually -- we currently

22 do represent five individuals and we've notified the bank of

23 the individuals that have already been retained by us, they've

24 already submitted claims for their personal property and so

25 they do have cash claims as well.  They already have been

1    retained -- have retained our firm.

2          THE COURT:  Do the other two counsel have other

3    defendants that you know are going to be making claims,

4    Ms. Obeid?

5          MS. OBEID:  Not that I'm aware of, Your Honor.

6          THE COURT:  Okay.

7          MR. DRUMMER:  No, Your Honor, not that I'm aware of

8    as well.

9          MR. CORTEGIANO:  Your Honor, other than Ms. Weiner

10   or is it Weiner?

11         MS. WEINER:  Weiner.

12         MR. CORTEGIANO:  Ms. Weiner's office there is

13   another counsel who has appeared on the record, Mr. Levine,

14   Dustin Levine, who did indicate that he represents a family

15   member of one of his clients who needs to be added.  I guess

16   they must have property in this box as well.  So it would be a

17   total of --

18         THE COURT:  Well, do all counsel sitting before the

19   Court today, are you all seeking to make this motion or is it

20   just one counsel who is seeking to bring this motion?

21         MS. WEINER:  All counsel.

22         MR. DRUMMER:  All counsel, Your Honor.

23         THE COURT:  You want to dismiss the interpleader,

24   but I guess I really don't understand why.  The interpleader,

25   as I understand it, is only an action that decides where the

1    money that is deposited with the Court should go.  It doesn't

2    have anything to do otherwise with the potential liability of

3    the bank, or do you believe it does?

4              MR. CORTEGIANO:  No, Your Honor, I agree.  As we

5    indicated in our letter, the entire purpose here is to deal

6    with the rest of the money that was leftover at the scene of

7    the crime.  In the addendum part of the complaint there is a

8    reference to dismissal with prejudice as to that specific

9    rest, because you can't distribute the money twice

10   essentially.

11             This is not a determination on liability at all.

12   That is not the purpose of an interpleader case.  An

13   interpleader is we have this money, there are all these people

14   who may have claims to it, we don't know how to figure out who

15   it belongs to so we ask the Court to, based on who makes

16   claims, distribute it some way that is proper.  So, no, a

17   lot -- in fact, Your Honor, there are separate claims that are

18   pending, claims for liability, negligence in the state court.

19   We've not removed them here because not all parties have made

20   those claims and they are really very separate issues and we

21   don't believe that they should be combined in any way.  There

22   is a very limited purpose to this case.  So our position is

23   there's no determination of liability only distribution in

24   this matter.

25             THE COURT:  I don't understand why you view it

1    differently.  What's the point of making a motion to dismiss

2    this action?

3              MS. WEINER:  So our position is if that's the bank's

4    position then we're okay, we don't have a dispute with the

5    money being deposited into the Court and having the Court

6    assist in settling out the 588.  Our concern is that in the

7    complaint they've asked to be dismissed with prejudice and

8    that the defendants be restrained from instituting any other

9    actions.  So we need to be clear and make sure that it's only

10   to the 588,000 because since we are alleging that the bank is

11   the liable party we don't believe they should be dismissed for

12   anything other than 588.

13             MR. CORTEGIANO:  Your Honor, if I may, to the extent

14   we have to amend the complaint anyway, if there is any

15   uncertainty about that we can certainly make it clear that the

16   dismissal with prejudice is only as to this money because,

17   again, it cannot be distributed twice.

18             MR. DRUMMER:  Your Honor, if I may add one quick

19   thing to what the other attorney at the table just said, is

20   that they are not only seeking restraint from instituting any

21   action, but from continuing any action.  And I know that our

22   client has a state court action pending against the bank.

23             MS. OBEID:  Your Honor, if I just may add that the

24   bank was robbed about a year ago and the bank is located in a

25   blue collar working class neighborhood and my clients are all

1    retired that are the victims of the bank robbery and many of

2    them are elderly, as is the case with other defendants'

3    clients as well.  And this whole situation has been very

4    upsetting to our clients, but what has made our clients even

5    more upset is the way the bank has treated them in failing to

6    compensate them for the cash that was taken from the safe

7    deposit box and the bank's negligence in all of this.  And the

8    failure of the bank to keep the bank secure --

9            THE COURT:  What does that have to do with your

10   motion to dismiss this action?

11           MS. OBEID:  Well, what I would suggest that Your

12   Honor do in this case is, as other counsel has sort of

13   mentioned, that if the bank agrees to take out the language in

14   the complaint, the offensive language in the complaint that

15   defendants cannot pursue or continue liability from the bank,

16   then we are okay with the action proceeding.  But I would also

17   suggest to Your Honor that this case be referred for

18   settlement for all claims instead of having to piecemeal this

19   up and having more delay and more delay, that it be referred

20   for settlement for all claims that defendants have against

21   plaintiff.

22           THE COURT:  What do you mean, there are claims in

23   the state court?

24           MS. OBEID:  Yes.  Because it is the cash --

25           THE COURT:  I don't have enough to do?

1          MS. OBEID:  I think to do it piecemeal --

2          THE COURT:  Well, I don't know what the answer to

3    that is.  I have had cases where, with the parties' agreement,

4    we have had settlement conferences where we've tried to settle

5    both actions, but that's only if everyone agrees.  Otherwise,

6    I have no jurisdiction to try and settle a state court.

7          I once had a personal injury action where a group of

8    children were injured in a bus accident with a camp and there

9    were several state cases and a federal case and with

10   everyone's consent I was able to settle the entire case, but

11   that's almost a form of mediation, if you will, and I don't

12   know what the state court judge's reaction to this is, but the

13   problem I see here is I think if he amends the complaint we

14   don't have this problem that you're concerned about that

15   somehow this interpleader action is going to affect your state

16   causes of action.

17         Is there any reason the parties have why I shouldn't

18   sign the order, because I haven't done this yet and I

19   apologize, directing that the money be deposited to the Court?

20         MS. WEINER:  So long as the plaintiff agrees to

21   remove the language that we have said was offensive, then we

22   don't have any issue with the money being deposited to the

23   court.

24         If I could just add one thing, the state court

25   issues that the bank is referring to, those are cases that our

1    firm has filed and they are for solely the cash that is part

2    of this.  So they are not separate, they are directly related

3    to the cash that will be deposited here.

4            THE COURT:  Well, so you have in effect -- you do

5    have a state claim that deals specifically with this cash and

6    what your clients' portion of that should be?

7            MS. WEINER:  That is correct.  And so we would

8    agree --

9            THE COURT:  I thought they were different causes of

10   action -- you'll agree to what, I'm sorry.

11           MS. WEINER:  We would agree to have our -- if there

12   is any type of settlement or discussion here as to the

13   588,000, those are our clients that have filed the state court

14   action we believe have a claim to that money as well.  They

15   are individuals who are named in this action.

16           THE COURT:  Well, are we going to now have two

17   actions going on simultaneously about what happens to this

18   $588,000?  I thought your action was for negligence or

19   something with respect to the bank.

20           MR. DRUMMER:  Our action is, Your Honor.

21           MS. WEINER:  Ours are as well.

22           MR. DRUMMER:  And our action also it's not just

23   cash, it's also jewelry, bonds and other items of personal

24   property that were in these safe deposit boxes.

25           MS. WEINER:  Our claims that were filed.

1           THE COURT:  Which were left scattered on the floor,

2   or I mean, I don't know --

3           MR. CORTEGIANO:  Your Honor, may I?  So perhaps the

4   way for all counsel to consider this is the following:  There

5   was a room essentially full of safe deposit boxes.  After the

6   robbery, there was currency, U.S. currency remaining in that

7   room.

8           THE COURT:  What happened, they get caught?

9           MR. CORTEGIANO:  They didn't bring enough bags, I

10  guess, I don't know.  They weren't able to remove all the

11  money.

12          THE COURT:  Good Lord.

13          MR. CORTEGIANO:  So there was U.S. currency

14  remaining at the site of the robbery.

15          THE COURT:  $588,000?

16          MR. CORTEGIANO:  Yes, Your Honor.  And I think when

17  they were apprehended they were apprehended with some millions

18  of dollars of cash.

19          THE COURT:  So these people have been arrested?

20          MR. CORTEGIANO:  They've been arrested.  There's a

21  case in the Southern District, a criminal prosecution in the

22  Southern District.

23          THE COURT:  That's interesting because this bank was

24  in Queens.

25          MR. CORTEGIANO:  Yes, I don't know why they brought

1   it in the Southern District, I don't recall.

2              THE COURT:  Probably because the FBI preferred to go

3   there that day, but that's beside the point.

4              MR. CORTEGIANO:  Possibly.

5              MS. OBEID:  I think they may have been involved in

6   some other robberies as well.

7              MR. CORTEGIANO:  Right.

8              THE COURT:  Okay.

9              MR. CORTEGIANO:  So there's two separate issues

10  here.

11             THE COURT:  I know, but my question is, are they

12  seeking access to the same $588,000 in the state court action?

13             MR. CORTEGIANO:  There is no interpleader case in

14  the state court under any claim, period.  There are claims for

15  negligence, gross negligence, breach of contract, GBL, state

16  court claims for all kinds of various actions for which

17  they're saying we lost the money, right, because of this

18  robbery and they are asserting that it's Maspeth's liability.

19             What to do with the U.S. currency located is a

20  separate issue.  In none of those complaints do they say we

21  have a claim to the money that remained at the scene of the

22  crime.  They are just saying we lost money and -- in fact,

23  they don't even state the amount in any of those complaints.

24  We're saying we located this currency, it's not ours, we need

25  to distribute it.  All that would happen by distribution of

1    this money -- so let's say plaintiff X or defendant X in this

2    case is also a plaintiff in lower court, if they recovered $10

3    here and they had a claim for a hundred dollars, the remaining

4    amount of the claim would be $90.  That would be the only --

5    they can't recover the money twice.

6              THE COURT:  That's not true because part of the --

7    I'm sorry, you mean if they say we had a total in the box of

8    $100.

9              MR. CORTEGIANO:  Yes, Your Honor, so they say I had

10   a hundred dollars --

11             THE COURT:  They're seeking recovery of first all of

12   what was in the box.

13             MR. CORTEGIANO:  They are seeking to recover -- in

14   state court their claims -- let's set aside claims for

15   physical property because those all have been dealt with and

16   for the most part I don't believe there are any claims for

17   property that are pending in state court because those have

18   all been settled out as far as I understand.

19             MS. OBEID:  With an insurance company represented by

20   the bank.

21             MR. CORTEGIANO:  With an insurance company, yes.

22             So what remains are claims for currency.  But their

23   claims are -- like I said, we had a hundred dollars in the

24   box, it's the bank's fault, pay us the hundred dollars.  So

25   that's a liability claim.

1        Here, it's just we have this physical money, it's

2   not ours we can't just take it, we need someone to distribute

3   it.  So if one of the parties here gets some part of that

4   money, it would by necessity reduce the total amount of their

5   claim in state court, but it would not preclude them or

6   prevent them from pursuing their claim and to the extent

7   that's not clear in the complaint, I can clarify that by

8   amending it and then also adding the other parties that need

9   to be added as well.

10        THE COURT:  All right.

11        MS. OBEID:  I have a client who is 93 years old.

12   The robbery took place a year ago.  He needs his cash for

13   medical issues.  The case is going on in the state court,

14   there's just been delay, delay, delay.  If we're going to be

15   settling in some kind of fashion the $500,000 that was found

16   on the floor, we should try and settle all the cash claims for

17   our clients.  And so, Your Honor, I would just ask that you

18   sort of direct the parties to have discussions or negotiations

19   about some sort of global -- if we can do some sort of global

20   settlement here of the cash claims.

21        THE COURT:  That's fine.  I think it would make

22   sense to get together and have some of those kind of

23   conversations.  Magistrate Judge Kuo is on the case, you can

24   discuss with her about that, but no one is challenging the

25   jurisdiction of this Court as I understand it?

1          MR. CORTEGIANO:  No, Your Honor.

2          MS. WEINER:  No.

3          THE COURT:  And the sum is 588,000.  The order I

4     think says it has to be invested in an interest bearing

5     account and I think the local rule requires the clerk deduct

6     from the income on the investment a fee equal to 10 percent of

7     the income earned.

8          MR. CORTEGIANO:  I'm sorry, Your Honor, what's the

9     last part?

10         THE COURT:  I think pursuant to the rules that a

11    court is supposed to deduct from the income on the amount a

12    fee equal to 10 percent of the income earned.

13         MR. CORTEGIANO:  I'm not familiar with the local

14    rule, but if that's the rule certainly.

15         THE COURT:  It is some rule, I'm not sure.  Just a

16    minute.

17         MS. OBEID:  Your Honor, while she's just looking for

18    that, I just might add if the bank were to make all the

19    victims of the safe deposit box whole, it would just be a

20    total of $3 million, that's all we're talking about here and

21    then less the 500,000.

22         MS. WEINER:  We just want to make clear on the

23    record, the 588,000 is the amount the bank was able to recover

24    from the floor of the bank and not the total amount that the

25    victims are seeking, that amount is over $3 million.

1          THE COURT:  None of the money or jewels are FDIC

2    insured, correct, in the safe deposit boxes?

3          MR. CORTEGIANO:  No, the FDIC does not insure those.

4          THE COURT:  That's right.  So it's Local Rule 67.1.

5    And you are seeking that it be held in an interest bearing

6    account?

7          MR. CORTEGIANO:  Your Honor, we're seeking direction

8    because, as I indicated when we spoke to them, normally it's

9    deposited when it's filed with the clerk's office, they won't

10   accept it, so I believe since it's such a large amount of

11   money it should go in an interest bearing account.

12         THE COURT:  Did you discuss that with our clerk's

13   office?

14         MR. CORTEGIANO:  When I met with the clerk's office

15   I spoke to and met with a number of people, and they all said

16   to seek direction from the assigned -- to Your Honor.  This

17   was before we filed and whoever was assigned we should seek

18   direction from the Court because they were not going to be

19   able to -- since it's physical currency they could not receive

20   it through their office.  So we can deposit it in a separate

21   institution, but -- well, Your Honor, I take that back, I'm

22   sorry.  When you say in an interest bearing account, I think

23   that the problem --

24         THE COURT:  No, I meant that the clerk be directed

25   to put it in an interest bearing account.

17

```
1              MR. CORTEGIANO:  The problem I think, Your Honor, of

2    putting it into an account is that the currency would then no

3    longer be in existence and I don't know if any of these

4    defendants want to inspect the currency, the actual currency

5    if they've marked it or otherwise can identify it --

6              THE COURT:  Are you talking about coming here with

7    $588,000 in cash?

8              MR. CORTEGIANO:  We don't know what to do with it,

9    Your Honor.  We found it in cash -- or the bank found it in

10   cash.

11             THE COURT:  You're right if you're talking about

12   putting it in that way, it can't be in an interest bearing

13   account.  Is there any requirement that it be placed in an

14   interest bearing account?

15             MR. CORTEGIANO:  Not into an interest bearing

16   account.  As I understand it, it has to be deposited with the

17   Court or at the Court's direction.  So that's why since we

18   couldn't physically deposit it in the clerk's office at the

19   commencement of the action --

20             THE COURT:  I don't know if they could take

21   $588,000.

22             MR. CORTEGIANO:  They can't.  They told me.

23             THE COURT:  They can't take the cash.

24             MR. CORTEGIANO:  They cannot take it they told me.

25   They said to me, don't come here -- they specifically said, do
```

 1   not come here with that much money.

 2               THE COURT:  So what do you plan on doing?

 3               MR. CORTEGIANO:  So our suggestion was either that

 4   we deposit the physical cash with another institution who

 5   would take it if the Court has the ability to do that,

 6   otherwise we would retain it separately as we have, however,

 7   for purposes of commencement of the action, for jurisdiction

 8   of the action it's supposed to be deposited.

 9               THE COURT:  So what would you deposit here?

10               MR. CORTEGIANO:  The only thing I have to deposit is

11   cash.  I can't deposit a check, because that's not the thing

12   that we're trying to distribute.  The Court could just

13   instruct us to hold the money segregated and that would act as

14   a deposit or allow some other institution to hold it

15   segregated as currency that would seem more problematic, but

16   we can't give it to the clerk, that would be the first place I

17   would want it to go, they don't have a safe or they don't have

18   somewhere to put it.

19               THE COURT:  So what kind of order are you looking

20   for from the Court?  Have you provided a proposed order?

21               MR. CORTEGIANO:  We uploaded an Order to Show Cause,

22   this was before there had been any appearance.  We uploaded an

23   Order to Show Cause and an affirmation.  I think the proposal

24   would be -- I don't know if we submitted a proposed order.

25               THE COURT:  I don't think you did.

1          MR. CORTEGIANO:  I think the proposal would be that

2    if the bank continues to hold it that that be deemed deposited

3    into the Court because there's no other way to do it.  The

4    clerk's office won't take it.

5          THE COURT:  Why don't you do me a favor and do a

6    little research on this and file a letter, serve it on the

7    other side indicating how you think this should be done.

8          MR. CORTEGIANO:  Sure, Your Honor.

9          THE COURT:  Anything else we need to take up?

10         MS. OBEID:  What date would you like him to do that

11   by?

12         THE COURT:  Well, if you could do that within a week

13   from today, which would be the 24th.  And can you file your

14   amended complaint by the 24th as well.

15         MR. CORTEGIANO:  I can certainly file it, I'd

16   like -- I guess the only question I have is about service on

17   the remaining defendants.  Do I then serve them with the

18   complaint and the amended complaint, or do I serve them with

19   just the amended complaint at that point?

20         THE COURT:  I don't know.

21         MR. CORTEGIANO:  So I can file it all within a week

22   and then we'll get it served.

23         THE COURT:  Okay.  You are not going to make a

24   motion once you see the amended complaint, correct?

25         MS. WEINER:  If the motion has removed the offensive

1    language that we have discussed, then, yes, we would not seek

2    to make a motion.

3              THE COURT:  Okay.

4              MS. OBEID:  So then could we have a direction to

5    Judge Kuo to help us with discussions in terms of a potential

6    global settlement of the cash?

7              THE COURT:  Well, if the parties are willing to

8    undertake -- I don't know, are they the same parties in state

9    court?

10             MR. CORTEGIANO:  No, there are some hundred and 34

11   defendants here and there's only about nine cases in the state

12   court and I believe some of the counsel -- I believe Ms. Obeid

13   doesn't have any actions pending in state court.

14             MS. WEINER:  I believe we have several and I believe

15   they have one.

16             MR. DRUMMER:  We have one.

17             MS. WEINER:  I don't know of any state court actions

18   pending that are not with our firm.

19             THE COURT:  If it is the same counsel you can always

20   resolve the case based on all of your cases, you can do that.

21   So in a way if you can't -- it makes sense if there are

22   actions all about the same event, not just a piecemeal

23   settlement, it always makes sense to try and settle everything

24   that's out there, if you can, just for both sides.  So I would

25   suggest if you can do that you try and do that and I will

```
 1   refer it to Judge Kuo to try and help you with settlement.

 2              MS. OBEID:  Thank you very much, Your Honor.

 3              MS. WEINER:  Thank you, Your Honor.

 4              THE COURT:  Okay.

 5              MR. CORTEGIANO:  Thank you, Your Honor.

 6              MR. DRUMMER:  Thank you, Your Honor.

 7              (Matter concluded.)

 8                      *    *    *    *    *

 9   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
10

11   s/ Georgette K. Betts              April 18, 2017

12   GEORGETTE K. BETTS                 DATE

13

14

15

16

17

18

19

20

21

22

23

24

25
```