1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MASPETH FEDERAL SAVINGS AND ) Civil Action
LOAN ASSOCIATION,            ) No. 17-723 (CBA)
                             )
            Plaintiff,       ) ORAL ARGUMENT
                             )
vs.                          ) Brooklyn, New York
                             ) Date:  December 21, 2017
ISRAEL RUBINSTEIN, et al.,   ) Time:  2:00 p.m.
                             )
            Defendants.      )
_____

TRANSCRIPT OF ORAL ARGUMENT
HELD BEFORE
THE HONORABLE JUDGE CAROL BAGLEY AMON
UNITED STATES DISTRICT JUDGE
_____

A P P E A R A N C E S

For the Plaintiff:          Diana J. Demirdjan, Esq.
                            Mark L. Cortegiano
                            65-12 69th Place
                            Middle Village, New York  11379
                            718-894-9500

For Certain Defendants:     Fran Obeid, Esq.
                            MFO Law, PC
                            260 Madison Avenue, 17th Floor
                            New York, New York  10016
                            212-628-3990

(Appearances continued on the next page)

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.
_____

Court Reporter:             Annette M. Montalvo, CSR, RDR, CRR
                            Official Court Reporter
                            United States Courthouse, Room N375
                            225 Cadman Plaza East
                            Brooklyn, New York  11201
                            718-804-2711

```
 1   Appearances:   (Cont'd)

 2   For Certain Defendants:   Brittany Weiner, Esq.
                               Imbesi Law PC
 3                             450 7th Avenue, Suite 1408
                               New York, New York  10123
 4                             646-767-2271
```

3

1    (WHEREUPON, commencing at 2:16 p.m., the following
2    proceedings were had in open court, to wit:)
3    THE LAW CLERK:  17-CV-723, on for oral argument.
4    THE COURT:  Sorry to keep you waiting.
5    Will the parties state their appearances, please.
6    First, for the plaintiff.
7    MS. DEMIRDJAN:  Diana Demirdjan, appearing for the
8    office of Mark Cortegiano, for the plaintiff, Maspeth Federal
9    Savings and Loan Association.
10   MS. OBEID:  Good afternoon, Your Honor.  Fran Obeid,
11   MFO Law, PC, appearing for nine defendants.
12   THE COURT:  All right.  And one more appearance.
13   MS. WEINER:  Brittany Weiner, Imbesi Law, on behalf
14   of about 30 plus defendants.
15   THE COURT:  Okay.  Have all of your -- have all of
16   each of your defendants filed counterclaims?
17   MS. OBEID:  So, really, Your Honor, the folks that
18   want to pursue their counterclaims with Your Honor is
19   Mr. Gordon, who has diversity jurisdiction, and the
20   Napolitanos, who agree -- whom the bank agreed could proceed
21   with their counterclaims before Your Honor.
22   THE COURT:  Are they the only two that --
23   MS. OBEID:  So, really, those are the only two that
24   would like to proceed in federal court.
25   THE COURT:  Are they the only two that have asserted

4

1  counterclaims?
2           MS. OBEID:  So they are the only two that have filed
3  as counterclaimants on the ECF system.
4           THE COURT:  Okay.
5           MS. DEMIRDJAN:  That's not true.  There's other
6  defendants --
7           MS. OBEID:  It's been styled as -- there are claims
8  that have been styled as counterclaims, but, really, when we
9  get down to it, we are talking about Mr. Gordon and
10 Mr. Napolitano.  That's why I only --
11          MS. DEMIRDJAN:  Okay.  Just, there have been other
12 defendants that filed counterclaims, I believe.
13          THE COURT:  That you -- that Ms. Obeid doesn't
14 represent?
15          MS. OBEID:  No, I represent them -- I'm sorry,
16 Your Honor, for the confusion.
17          Those other defendants, they're -- their claims were
18 sort of styled as counterclaims, but, you know, I -- their
19 claims were styled as counterclaims, and that's why the
20 motion -- the opposition motion is brought on their behalf as
21 well.
22          THE COURT:  So it is more than Gordon and
23 Napolitano?
24          MS. OBEID:  Yes.  But I feel I have a stronger
25 argument concerning Mr. Gordon than Mr. Napolitano.

5

1  MS. DEMIRDJAN: Your Honor, if I may. There's also
2  one pro se defendant who had filed a counterclaim.
3  THE COURT: And who is that?
4  MS. DEMIRDJAN: Mary Ann Ahearne. We sent her
5  notices of our motion, but we have not heard --
6  THE COURT: Gordon is the Florida resident, right?
7  MS. OBEID: Correct.
8  THE COURT: And what about Napolitano?
9  MS. OBEID: No. The Napolitanos are in Queens.
10  THE COURT: Why do you say that their claims are
11  stronger than the rest of the people?
12  MS. OBEID: Because the bank agreed -- made a
13  written agreement with me that the Napolitanos could proceed
14  before Your Honor with their claims. And that's attached to
15  my declaration as an exhibit.
16  MS. DEMIRDJAN: I think what counsel Obeid is
17  referring to is an e-mail that she sent us after she had
18  already filed the counterclaims for these individuals asking
19  us if we had -- if we objected to them. Perhaps we didn't
20  quite understand what she meant by "object," but the claims
21  were already filed. There was nothing to necessarily object
22  to at the time as we felt permissive counterclaims at the
23  time.
24  THE COURT: All right. Ms. Weiner, do you have --
25  you represent individuals who filed counterclaims?

6

1	MS. WEINER:  We don't have anyone who filed
2	counterclaims in federal court.
3	THE COURT:  So how many counterclaims are -- how
4	many do you -- let me just ask plaintiff's counsel.  How many
5	individuals are you moving against, in terms of counterclaims?
6	MS. DEMIRDJAN:  All of the --
7	THE COURT:  And how many is that?
8	MS. DEMIRDJAN:  Eight, we believe.
9	THE COURT:  Eight.  And that includes the pro se?
10	MS. DEMIRDJAN:  Correct.
11	THE COURT:  Okay.  Do you want to be heard on your
12	motion?
13	MS. DEMIRDJAN:  Yes, Your Honor.
14	Your Honor, this is an interpleader action where
15	plaintiff Maspeth has already deposited a sum of approximately
16	$588,000 with this Court, seeking for the Court to distribute
17	the funds equitably among the claimants.  The money was
18	recovered after a break-in that occurred at Maspeth's Rego
19	Park location on May 21, 2016.  Maspeth had no way of knowing
20	who the funds belonged to, and, accordingly, both the instant
21	interpleader action naming all of the parties who could
22	potentially have had a claim to the funds.  And that included
23	anybody that made a cash claim to the bank and anybody who
24	held a safety deposit bank that did not make any type of
25	claim.

1      Currently, there are over 40 claimants who are
2 represented either by counsel or have appeared pro se who are
3 going to be making a claim to this recovered currency.  This
4 action, the interpleader action, was brought for the limited
5 purpose of distributing that money.
6      THE COURT:  But these cases, these claims are
7 related to that, aren't they?
8      MS. DEMIRDJAN:  The claims are based on --
9      THE COURT:  They are not claims that are unrelated
10 to the interpleader.
11      MS. DEMIRDJAN:  Correct.  Well, the interpleader was
12 brought to distribute this money.  The counterclaims are based
13 on negligence, breach of contract, and they go to liability.
14 So Maspeth's position is that we're not attempting in any way
15 to absolve ourselves of any potential liability over any, you
16 know, independent liability claims for the breach of contract
17 or negligence that any of these defendants have.  We're just
18 seeking to be discharged from liability with respect to this
19 money that was found --
20      THE COURT:  You can be discharged from liability,
21 but not dismissed from the case, correct?
22      MS. DEMIRDJAN:  Well, again --
23      THE COURT:  I mean, that Merrill Lynch --
24      MS. DEMIRDJAN:  Once the interpleader action is
25 resolved, it leaves the seven counterclaims, or two, or

8

1  however many Counselor Obeid --
2          THE COURT:  It is not resolved, technically, until
3  the money is distributed.  The money hasn't been distributed.
4          MS. DEMIRDJAN:  Correct.
5          THE COURT:  Though, you could be discharged from
6  further liability for the res, you still would not be
7  dismissed from the case.
8          MS. DEMIRDJAN:  Well, the Second Circuit has held
9  that interpleader action should really be taken in two steps,
10 and the first step is meeting the jurisdictional requirements
11 of the interpleader statute.  And those jurisdictional
12 requirements are that there's two or more claimants of diverse
13 citizenship, which we have here, a deposit of funds into the
14 court, which Maspeth has already done, and a fund greater than
15 $500.  And the Second Circuit has held that once those
16 jurisdictional requirements are met, the stakeholder, the
17 disinterested stakeholder in this case, Maspeth, should be
18 dismissed from the action and the court left to distribute the
19 funds.
20         THE COURT:  But then there are other cases, the
21 Merrill Lynch case, Judge Sand's case, where he held that
22 because the court has determined that, it was with Citicorp,
23 Citicorp is discharged from further liability for the res, but
24 is not dismissed from the case.  And that being the case, you
25 could have the counterclaims remain.

1             MS. DEMIRDJAN: Well, we --
2             THE COURT: How do you distinguish that case?
3             MS. DEMIRDJAN: We believe that the counterclaims in
4    this case would be better served in state court.
5             THE COURT: Well, they may be, but that doesn't
6    mean -- I mean, you've got one counterclaim that has
7    diversity. So I can't just dis -- it is not a claim I can
8    decide not to assume supplemental jurisdiction over. It's
9    diverse.
10            MS. DEMIRDJAN: Well --
11            THE COURT: The fellow from Florida.
12            MS. DEMIRDJAN: Correct. Mr. Gordon is apparently a
13   Florida resident. However, just for Your Honor's information,
14   the current state court cases that are pending, again, and
15   there's 13 of them that have all now been consolidated before
16   one judge, there's been a stipulation to consolidate, Tyco
17   Integrated Security, which was the alarm company for Maspeth,
18   has also been named a defendant in each and every one of those
19   actions. Tyco is also a Florida resident, a corporate
20   resident.
21            THE COURT: But Tyco hasn't been joined in this
22   action.
23            MS. DEMIRDJAN: They have not. However, if this
24   were to -- because it's only been brought as an interpleader
25   action to distribute the funds. But if we're going to be

1  touching upon the liability issues in this case, or any
2  potential liability, Maspeth would certainly seek to bring in
3  Tyco as a third party defendant.  Thus, now they would have an
4  issue with diversity and the Court would lack subject matter
5  jurisdiction --
6        THE COURT:  But that would only be a problem
7  assuming that the interpleader was dismissed, because I
8  would -- I could still have supplemental jurisdiction over the
9  counterclaims, correct?  As long as the interpleader action is
10 not dismissed, the counterclaims are related to that, I could
11 still have supplemental jurisdiction over the counterclaims.
12       MS. DEMIRDJAN:  Our position, Your Honor, is that
13 Maspeth has done everything that it can do at this point.  It
14 has met all the jurisdictional requirements, it has deposited
15 the funds, it's cooperated in every step of the process, and
16 there's really nothing left for Maspeth to do at this point.
17       THE COURT:  Except deal with the counterclaim.
18       MS. DEMIRDJAN:  Except for the counterclaims, which
19 we believe in the interest of judicial economy and fairness
20 would be better adjudicated in state court where we have the
21 other 13 cases, Tyco is a defendant in those cases as well.
22 And, also, for purposes of uniformity of decision, and it
23 would be -- we believe in the interest of judicial economy to
24 bring those cases in state court.
25       THE COURT:  Well, I might think it makes more sense

to do that, too.  But I don't know that my thinking it makes more sense is an appropriate legal judgment.

Let me just ask, Ms. Obeid, just practically speaking, why have these identical issues in a bunch of different courts if there's a state court judge who has this identical issue before her?

MS. OBEID:  Because, Your Honor, the bank has been successful in stalling the state court actions.  They have gotten no where.  The bank has brought in state court a motion to strike the complaint because it is prejudicial and scandalous, which tied up the state court.

Mr. Gordon is 93 years old.  Mr. Gordon would like his claim resolved.  And we can get resolution much quickly before Your Honor.

THE COURT:  Let me ask you a question about Mr. Gordon.  Mr. Gordon said that he had 80 --

MS. OBEID:  In excess of 80, yes.

THE COURT:  In excess of 80?

MS. OBEID:  I think we could do excess of 80, yes.

THE COURT:  If he gets to distribution from the res, that could bring his claim below the $75,000 threshold, right?

MS. OBEID:  Your Honor, we are not sure how that's all going to work out yet, but --

THE COURT:  I realize that.

MS. OBEID:  It is my understanding that there

1   were -- you know, we're talking about over a hundred
2   claimants, many of whom had much more money in their safety
3   deposit boxes than Mr. Gordan.  And were just --
4              THE COURT:  How many claimants have filed?  I mean,
5   we're not dealing with that many claimants.
6              MS. DEMIRDJAN:  No, I think there's under 50.
7              MS. WEINER:  We represent 37 individuals, and they
8   will all be making a claim for the cash.  I can't speak to the
9   other individuals.
10             MS. OBEID:  I mean, the caption, if you count up the
11  folks in the caption, I mean, it is over a hundred people.
12             MS. DEMIRDJAN:  That's correct.  However, there's
13  only been -- there's only -- about approximately 40, 40, 45,
14  who have either -- who have basically appeared either by
15  counsel or pro se.  Everybody else is either asked to be
16  dismissed, taken out of the action, or has defaulted in
17  appearing.
18             MS. OBEID:  I'm sorry.  This complaint's been
19  amended three times, so for the purposes, according to the
20  bank, of dropping those folks out.  So I thought we have sort
21  of an accurate caption.
22             MS. DEMIRDJAN:  There's a paragraph in the third
23  amended complaint, paragraph 4, that lists a number of
24  individuals that were removed from the action.  And it
25  continues, Your Honor.  But a number of them have also

1  defaulted, and, therefore, are still in the caption.  They
2  haven't been asked to be discontinued from the action, but
3  they are in default.  I think that makes up the vast majority
4  of the named claimants in the caption.
5              THE COURT:  All right.  On the issue about the
6  counterclaims, is there anything further you want to add, or
7  should I turn the discussion over to Ms. Obeid?
8              MS. DEMIRDJAN:  Your Honor, our position, in
9  essence, is that there's no basis for federal court
10 jurisdiction once the interpleader is resolved, and there's
11 also no -- there's no complete diversity because the
12 defendants in the action are mostly New York defendants with
13 the exception of --
14             THE COURT:  I know, but you don't view the
15 counterclaimants as a group.
16             MS. DEMIRDJAN:  And taking -- well, the action was
17 brought as an interpleader.  We believe that each of the
18 individual --
19             THE COURT:  From your perspective.
20             MS. DEMIRDJAN:  From our perspective.
21             THE COURT:  But once they assert counterclaims,
22 their individual counterclaims, you don't look, for diversity
23 purposes, to each counterclaimant and say, well, because
24 they're not all diverse, then there's no original jurisdiction
25 over them.

1    MS. DEMIRDJAN:  Well, for purposes of the
2 interpleader action, we believe that the counterclaims were
3 not compulsory, they could have been brought in state court,
4 like the other cases were brought.  And in mostly, also,
5 the -- if the cases were brought in federal court, and
6 remained in federal court, once we seek to bring Maspeth --
7 I'm sorry, once Maspeth seeks to bring in Tyco, we're going to
8 have a diversity issue and move to remove the case to state
9 court, where the other cases are already pending and Tyco's a
10 named defendant.
11    THE COURT:  Well, but then again, you are going to
12 have to explain why I shouldn't adopt supplemental
13 jurisdiction at that point.  In other words, that I know your
14 argument that you think the interpleader is over, but I'm not
15 sure that that's the case.
16    MS. DEMIRDJAN:  Again, I'm sorry.  The Second
17 Circuit has held that, you know, we should -- absent any type
18 of bad faith on Maspeth's part --
19    THE COURT:  Well, there's a difference between being
20 discharged and dismissed, correct?  You can be discharged.  I
21 mean, I am looking at Judge Sand's case.
22    MS. DEMIRDJAN:  Well, the court in *Mendez v.*
23 *Teachers*, held that they should be dismissed from the action
24 and discharged from liability.
25    THE COURT:  All right.  Ms. Obeid, do you want to be

1  heard?
2           MS. OBEID:  Yes, I do, Your Honor.  Thank you very
3  much.
4           The bank overstates the law on interpleader, and
5  overstates the fact that it must be that Your Honor must
6  discharge them once 28 USC 1335 has been met.  The Second
7  Circuit in *New York Life* does not state that a plaintiff
8  should be automatically discharged prior to, quote --
9           THE COURT:  Well, I think there's actually a
10 distinction between discharged and dismissed.
11          MS. OBEID:  Uh-huh.
12          THE COURT:  At least that's the distinction I'm
13 seeing in the Merrill Lynch case, that where Judge Sand says
14 they should be discharged from further liability for the res,
15 but not dismissed from the case.
16          MS. OBEID:  And I don't know if Your Honor had an
17 opportunity to look at the *National Union* case.  I believe
18 that's Judge Dearie's case.  You know, Judge Dearie said
19 something very interesting in *National Union*, which he said
20 that at 691 F.Supp 621, that an interpleading plaintiff must
21 deposit with the court the, quote, highest amount claimed by
22 defendants.  Here, according to the complaint, that would be
23 $3.5 million.
24          Look.  I think this is a very unusual interpleader
25 case because all the authority really seems to involve

16

1  insurance companies or escrow agents in which defendants are
2  really fighting amongst themselves.  We don't have that here.
3        We believe that the Court should remain in the
4  case -- I'm sorry, that the bank should remain in the case
5  because we really don't know what's going to happen when the
6  Court attempts a distribution, be it pro rata or otherwise.
7        THE COURT:  Have you made an argument before that
8  the interpleader action is somehow defective because they
9  haven't deposited $3.5 million?
10       MS. OBEID:  I have not, Your Honor.
11       THE COURT:  I thought that's what I just heard you
12 say a minute ago.
13       MS. OBEID:  That is.
14       THE COURT:  So you are making that argument now?
15       MS. OBEID:  I am making that argument now.
16       THE COURT:  I didn't understand that to have been
17 made.  So you think that -- you think that they should not be
18 discharged because they haven't put that amount of money in?
19       MS. OBEID:  Yes, Your Honor.
20       THE COURT:  Well, I don't think it is fair for you
21 to make that argument here without giving counsel an
22 opportunity to address that argument.
23       MS. OBEID:  I understand, Your Honor.  So --
24       THE COURT:  So are you making that argument, or not?
25       MS. OBEID:  I am going to make that argument.

*Annette M. Montalvo, CSR, RDR, CRR*
*Official Court Reporter*

1   THE COURT:  Well, then you are going to have to
2   supplement your papers if you are going to make that argument
3   and give counsel an opportunity to respond to it.  That's the
4   first time I have understood that anybody was challenging the
5   interpleader.  I mean, they put that money into the court,
6   there was an agreement I thought the parties had reached on
7   how they were going to distribute the money.  I didn't know
8   that was an issue at all.  I thought they just dealt with the
9   counterclaim.  You're sure you're pursuing that, Ms. Obeid?
10   MS. OBEID:  Your Honor, can you give me just a
11   moment, please.
12   THE COURT:  All right.
13   (Short pause.)
14   MS. OBEID:  Your Honor, my apologies to the bank's
15   counsel and Your Honor.  I am going to withdraw that portion
16   of the argument, all right?
17   But if we look at 28 USC, the language of it,
18   Section 1335, that the Court can -- that the Court can issue
19   an order, it can be conditioned upon the compliance by the
20   plaintiff with the future order of judgment of the Court with
21   respect to the subject matter in controversy.  And we believe
22   that it is not inequitable for the Court to have the bank
23   remain in the action, should it need its assistance concerning
24   the distribution.
25   You know, the bank is in a big rush to drop the

1  money and run with the court, and we think that that's just
2  not the appropriate action here.
3         Concerning the supplemental jurisdiction, again, as
4  noted in the *Rodriguez* case, cited by the bank, the court
5  enjoys wide latitude in determining whether to retain
6  jurisdiction over state law claims, where the federal claims
7  have been extinguished.  And we believe that the Court should
8  do so here in the interest of fairness, mainly in the interest
9  of fairness, also, in the interest of judicial economy and
10 convenience of the parties.
11        In terms of fairness, my declaration really sets
12 forth that I had -- I believe that I was proceeding with 26(f)
13 discovery with the bank.  I sent them the June 22, 2017, I
14 sent them the 26(f) meeting plan and was told by the bank that
15 he was on trial, but would return the 26(f) meeting report in
16 two weeks from June 22.  I did not receive it.  I followed up
17 via e-mail, via July 11 and July 17 to schedule the 26(f)
18 conference, inquire about the 26(f) meeting report, a date the
19 conference was agreed on, and I inquired as to whether the
20 bank would agree that the Napolitanos can litigate their claim
21 against the bank in federal court.
22        In the context of proceeding with discovery, to
23 which we all understood, the bank agreed but requested we hold
24 off on the 26(f) conference until the third amended complaint
25 was filed and answered, which I agreed to.  On September 26,

1  the bank wrote Your Honor requesting a pre-motion conference
2  to be discharged and dismissed.
3      The bank has strung along Mr. Gordon and the
4  Napolitanos for months, and wish to send them in state court,
5  where the bank's been successful in stalling the litigation.
6  As I mentioned previously, Mr. Gordon is 93.  It is only fair
7  for him and the other -- and, of course, the other folks, that
8  they be allowed to proceed before Your Honor, who is familiar
9  with the case, and that Mr. Gordon not be forced to re-file
10 his case in the Eastern District of New York.
11     As for Tyco, brought up for the first time in reply,
12 Tyco is a business unit of Tyco International.  Tyco
13 International is what we look to for the citizenship
14 concerning diversity.  Tyco International is incorporated in
15 the Republic of Ireland, with the operation headquarters in
16 Princeton, New Jersey in the United States.  So, therefore,
17 diversity remains.  I also think that it is premature to
18 examine Tyco's diversity now, as it is not a party to the
19 action.
20     As noted in the *Rodriguez* case, cited by the bank,
21 in the appropriate situation, a federal court may retain
22 jurisdiction over state law claims, not withstanding the early
23 demise of all foundation federal claims, and we believe this
24 is the appropriate situation given the facts and
25 circumstances.  Thank you.

1  THE COURT: All right. I've looked this over. As I
2  said, I think that Judge Sand's case is one that I would
3  follow here, and I'm not going at this point to -- at this
4  juncture going to dismiss the counterclaims. The interpleader
5  action has not been fully resolved yet. We haven't gotten the
6  information from the claim ups -- I mean, from the claimants.
7  I think the case would discharge them for liability for the
8  res, they may be entitled to that, but I don't think they are
9  entitled yet to be, at this point, to be dismissed from the
10 case. So for that reason, I am not going to dismiss the
11 counterclaims. I think at this stage it is -- well, one, it
12 has at least right now, diversity jurisdiction, and in light
13 of that, it seems appropriate to consider supplemental
14 jurisdiction, to hold the others in at this point for
15 supplemental jurisdiction. So at this stage of the
16 litigation, the application to dismiss the counterclaims is
17 denied.
18      Okay. Thank you.
19      (Proceedings concluded at 2:40 p.m.)
            * * * * *
20
            **REPORTER'S CERTIFICATE**
21
22  I, ANNETTE M. MONTALVO, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete
23  transcript of the proceedings to the best of my ability.
    Dated this 11th day of January, 2018.
24
    /s/Annette M. Montalvo
25  Annette M. Montalvo, CSR, RDR, CRR
    Official Court Reporter